

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed October 09, 2012**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


IN RE:                          §
                                §
FRANCISCO BENITES,              §       CASE NO. 11-35444-SGJ-7
                                §
        Debtor.                 §
                                §
_____§_____
                                §
S.P. AUTO SALES, INC.,          §       ADV. PROC. NO. 11-03614
                                §
        Plaintiff,              §
                                §
V.                              §
                                §
FRANCISCO BENITES,              §
                                §
        Defendant.              §

**MEMORANDUM OPINION IN SUPPORT OF JUDGMENT OF NONDISCHARGEABILITY,
PURSUANT TO SECTION 523(a)(6) OF THE BANKRUPTCY CODE**

### I. Introduction

Plaintiff, S.P. Auto Sales, Inc. (the "Plaintiff" or

"S.P."), filed the above-referenced adversary proceeding (the

1

"Adversary Proceeding") in the above-referenced bankruptcy case (the "Bankruptcy Case") of Francisco Benites (the "Defendant" or "Benites") to determine the dischargeability of Plaintiff's prepetition state court judgment, pursuant to sections 523(a)(2), (a)(4), and (a)(6) of the Bankruptcy Code. Specifically, the state court judgment relates to a conversion action brought in the 160th District Court of Dallas County, Texas (the "State Court"), in which the Plaintiff was awarded a final judgment of $23,000, which was comprised of a $15,000 award for actual damages, an $8,000 award for reasonable and necessary attorney's fees, plus pre- and post-judgment interest at a rate of 5% (the "State Court Judgment").

The bankruptcy court previously denied a Motion for Summary Judgment filed by the Plaintiff (the "Plaintiff's MSJ") [DE # 6][1] on May 3, 2012, in which the Plaintiff asserted that the State Court Judgment—since resulting from a claim of **conversion**—should be given preclusive effect in this Adversary Proceeding. Essentially, Plaintiff argued that the State Court Judgment was based upon an implicit finding of conversion and, thus, the issues litigated in the State Court were synonymous with and satisfied the requirements of sections 523(a)(2), (a)(4), and/or

---

[1] References to "DE # __" throughout this Memorandum Opinion refer to the record entry number at which a particular pleading appears in the docket maintained by the Bankruptcy Clerk for this Adversary Proceeding or, where indicated, for the Bankruptcy Case generally.

(a)(6) of the Bankruptcy Code as a matter of law.  Under Texas
law, collateral estoppel applies where "(1) the facts sought to
be litigated in the second action were fully and fairly litigated
in the first action; (2) those facts were essential to the
judgment in the first action; and (3) the parties were cast as
adversaries in the first action."[2]  While the bankruptcy court
acknowledged that collateral estoppel may be applied with regard
to state court judgments in bankruptcy dischargeability
proceedings,[3] the court determined that, since there were no
findings or reasoning whatsoever set forth in the State Court
Judgment (*i.e.,* not a specific finding of conversion, not a
finding as to the Plaintiff's intent, and not a hint as to the
legal standards that the court had utilized), there was no basis
to allow the court to conclude, as a matter of law, that the
State Court Judgment was nondischargeable under sections
523(a)(2), (a)(4), and/or (a)(6).[4]  As a result, the court held a

---

[2] *Gupta v. E. Idaho Tumor Inst., Inc. (In re Gupta)*, 394
F.3d 347, 351 n.4 (5th Cir. 2004).

[3] *See Grogan v. Garner*, 498 U.S. 279, 284-85 (1991); *Pancake
v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th
Cir. 1997).

[4] "Collateral estoppel does not preclude litigation of an
issue unless both the facts and the legal standard used to assess
them are the same in both proceedings." *Copeland v. Merrill
Lynch & Co., Inc.*, 47 F.3d 1415, 1422 (5th Cir. 1995).
"[C]ollateral estoppel does **not** apply unless the facts and **legal
standard used to assess those facts** are the same in both
proceedings." *Fin. Acquisition Partners, L.P. v. Blackwell*, 440
F.3d 278, 284 (5th Cir. 2006) (emphasis in the original).  While

trial on May 23, 2012 (the "Trial") to specifically determine whether the facts and issues underlying the State Court Judgment fit within the standards articulated in sections 523(a)(2), (a)(4), and/or (a)(6) of the Bankruptcy Code.[5] The following are the bankruptcy court's findings of fact and conclusions of law from the Trial, pursuant to Fed. R. Bankr P. 7052 and Fed. R. Civ. P. 52. Based upon the evidence submitted by both the

---

the factual setting in both matters may be the same, if the legal standard to be applied is different in each, the issues are not identical and collateral estoppel should not apply. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995). *See also Brister v. A.W.I., Inc.*, 946 F.2d 350, 354 n. 1 (5th Cir. 1991) ("Not only the facts, but also the legal standard used to assess them, must be identical.").

[5] To the extent the court finds that the State Court Judgment is nondischargeable under section 523 of the Bankruptcy Code, the court will give the amount of the State Court Judgment (*i.e.*, $23,000) *res judicata* effect. *See, e.g., Schwartz v. Schwartz (In re Schwartz)*, 217 B.R. 533, 537 (Bankr. E.D. Tex. 1998) (court found that it was not required to relitigate the issue of the amount of the claim since that amount was already fully and fairly litigated in the state court)(citing *Brown v. Felsen*, 442 U.S. 127, 139 (1979) & *Fielder v. King (In re King)*, 103 F.3d 17, 19 (5th Cir. 1997)); *Cotten v. Deasy (In re Deasy)*, 275 B.R. 490, 494 (Bankr. N.D. Tex. 2002), *aff'd*, No. 3:02-CV-1017, 2002 WL 31114061 (N.D. Tex. Sept. 23, 2002) (court found that to the extent plaintiff was successful on his section 523 claim, then the amount of the debt would be the same as found by the state court). *See also In re Bulic*, 997 F.2d 299, 304 (7th Cir. 1993)(state court judgment must be given full faith and credit that the debt existed); *Comer v. Comer (In re Comer)*, 723 F.2d 737, 740 (9th Cir. 1984) (*res judicata* bars bankruptcy court from determining the extent of the claim (*i.e.*, the amount of the claim), not the nature of the claim (*i.e.*, dischargeability)). Moreover, the Defendant did not contest the amount of the State Court Judgment at any time during the Adversary Proceeding. In fact, the Defendant lists the State Court Judgment as a non-contingent, liquidated, undisputed debt in Schedule F of his bankruptcy schedules. *See* DE # 1 in the Bankruptcy Case.

Plaintiff and the Defendant, the court finds that the Plaintiff is entitled to a nondischargeable judgment in the amount of $23,000, plus pre- and post-judgment interest at 5% as awarded by the State Court, pursuant to section 523(a)(6) of the Bankruptcy Code.

## II. Jurisdiction

Bankruptcy subject matter jurisdiction exists in this Adversary Proceeding, pursuant to 28 U.S.C. § 1334(b). This bankruptcy court has authority to exercise bankruptcy subject matter jurisdiction, pursuant to 28 U.S.C. § 157(a) and the Standing Order of Reference of Bankruptcy Cases and Proceedings (Misc. Rule No. 33), for the Northern District of Texas, dated August 3, 1984. Additionally, statutory core matters are involved in this Adversary Proceeding, as contemplated by 28 U.S.C. § 157(b)(2)(A) and (I). No party has challenged the court's Constitutional authority to enter a final judgment in this matter.

## III. Findings of Fact

1. Plaintiff, through its owner, Hooshang Steve Poorshaygan ("Poorshaygan"), sold and financed a 2006 Dodge Magnum, VIN 2DFV47V66H120008 (the "Vehicle") to Karl Hermes ("Hermes") on July 11, 2009, pursuant to a Motor Vehicle Retail Installment Sales Contract (the "Sales Contract").[6] After making a down

---

[6] *See* Plaintiff's Exhibits 4, 5.

payment and one installment payment under the Sales Contract, Hermes failed to make any further payments under the Sales Contract.

2. A few short weeks after entering into the Sales Contract and taking possession of the Vehicle, Hermes took the Vehicle to Benites' (*i.e.,* the Debtor's) place of business, Alliance Auto Center, for repairs and other work.  A work order (the "Work Order"), dated August 8, 2009, was purportedly signed by Hermes, contemplating the purchase of certain parts and various repairs to the Vehicle.[7]  The bottom portion of the Work Order provided that the price for the parts and repairs would total $6,456.40.[8]

3. However, Hermes never paid Benites for the work done, which Benites testified was completed on or around August 20, 2009.  Because of such non-payment, Benites decided to retain possession of the Vehicle and attempt to sell it to satisfy his claim for the work performed on it.  Accordingly, Benites sent a Notice of Sale of Motor Vehicle to Satisfy Lien, dated **September 14, 2009** (the "Notice of Sale") to Hermes and also to the first lien holder, SP Enterprises.[9]  The Notice of Sale claimed a lien on the Vehicle in the amount of $7,696.37, and stated that

---

[7] *See* Defendant's Exhibit 3 & Plaintiff's Exhibit 11.

[8] *Id.*

[9] *See* Defendant's Exhibit 1, 2 & Plaintiff's Exhibit 6.  SP Enterprises was apparently a "dba" of S.P.

Benites would sell the Vehicle on **October 14, 2009** at the premises of Alliance Auto Center, unless Benites was paid $7,841.37 (plus any outstanding storage fees).[10]

4. On October 7, 2009, counsel for SP Enterprises sent a letter to Benites demanding the immediate relinquishment of the Vehicle.[11] Benites did not relinquish possession of the Vehicle, however. In fact, the testimony of both Benites and Poorshaygan at the Trial was that Benites and Poorshaygan had several communications after the Notice of Sale was sent regarding the amount that SP Enterprises would be willing to pay Benites in order to satisfy Benites' claimed mechanic's lien. However, an agreement was never reached and, **in January 2010**, Benites advertised the Vehicle for sale on the internet advertising website known as "Craig's List." On **January 22, 2010**, Benites sold the Vehicle to a third-party buyer for $5,000.[12]

5. On November 1, 2010, S.P. sued Benites for conversion of the Vehicle, in cause number DC-09-14672 (the "State Court Case")

---

[10] *Id.*

[11] *See* Plaintiff's Exhibit 3 (Request for Admission # 16), 8.

[12] *See* Defendant's Exhibits 7, 8 & Plaintiff's Exhibits 9, 10. Note that, while the cashier's check to Benites showed a purchase price of $5,000, the Application for Texas Certificate of Title referenced a purchase price of $2,100. Benites testified that this amount was filled in by the buyer and that the buyer did so for tax reasons.

in the State Court.[13] The State Court Case was tried without a jury, and the State Court entered a judgment in favor of S.P.[14] As stated previously, the amount of the State Court Judgment was $23,000.00, plus pre- and post-judgment interest at a rate of 5%.

6. On August 31, 2011, Benites filed the Bankruptcy Case. On November 21, 2011, S.P. filed the Adversary Proceeding seeking a determination by the bankruptcy court that the State Court Judgement was nondischargeable under sections 523(a)(2), 523(a)(4), and 523(a)(6) of the Bankruptcy Code.

### IV. Conclusions of Law

7. In the Adversary Proceeding, the Plaintiff asserts that Defendant violated section 70.006 of the Texas Property Code, and this ultimately creates the requisite level of intent and other standards so as to fit within sections 523(a)(2), (a)(4), and (a)(6) of the Bankruptcy Code. First, the Plaintiff asserts that, because the Defendant violated section 70.006 of the Texas Property Code by selling the Vehicle under false pretenses (*i.e.*,

---

[13] *See* Plaintiff's Exhibit 2.

[14] The Plaintiff and the Defendant both stipulated in the Agreed Joint Pretrial Order [DE # 13] that "the state court necessarily found that S.P. Auto Sales, Inc. was entitled to possession of the Vehicle; that Francisco Benites unlawfully and without authorization assumed and exercised control over the Vehicle to the exclusion of, or inconsistent with, S.P. Auto Sales, Inc.'s rights as first lienholder; that S.P. Auto Sales, Inc. demanded return of the Vehicle; and that Benites refused to return the Vehicle." However, the court notes that none of these findings were contained in the State Court Judgment.

claiming a lien where none existed and giving a false notice of sale) that the State Court Judgment is nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code. Second, the Plaintiff asserts that, because the Defendant violated section 70.006 of the Texas Property Code, he also committed larceny and, thus, the State Court Judgment is nondischargeable under section 523(a)(4) of the Bankruptcy Code. Finally, as to section 523(a)(6), the Plaintiff asserts that, because the Defendant violated section 70.006 of the Texas Property Code, he effectively caused a willful and malicious injury to the Plaintiff and, thus, the State Court Judgment is nondischargeable. As to these allegations, the Defendant asserts that he properly exercised his rights and remedies as a lien holder for the repairs he made to the Vehicle and, after giving the requisite notice and following the procedures articulated under section 70.006 of the Texas Property Code, he lawfully sold the Vehicle.

8. This Adversary Proceeding ultimately raises two key issues: (1) whether the Defendant satisfied the requirements of section 70.006 of the Texas Property Code when he sold the Vehicle to satisfy his lien;[15] and if he did not, (2) whether the noncompliance with section 70.006 of the Texas Property Code

---

[15] The court would note that the Plaintiff and Defendant each submitted post-trial briefing that specifically addressed this issue. *See* DE ## 17, 18.

ultimately creates a nondischargeable claim under section 523(a)(2), (a)(4), or (a)(6) of the Bankruptcy Code.

## A. *Did the Defendant Satisfy the Requirements of Section 70.006 of the Texas Property Code?*[16]

9. Section 70.006 of the Texas Property Code[17] provides:

(a) A holder of a lien under this subchapter or Chapter 59 on a motor vehicle subject to Chapter 501,

---

[16] Under the Texas Property Code, section 70.001 entitled "Worker's Lien" provides that:

(a) A worker in this state who by labor repairs an article, including a vehicle, motorboat, vessel, or outboard motor, may retain possession of the article until:
(1) the amount due under the contract for the repairs is paid; or
(2) if no amount is specified by the contract, the reasonable and usual compensation is paid.

Tex Prop. Code Ann. § 70.001(a)(1)-(2) (West 2006). Thus, a worker who repairs a vehicle may retain possession until the amount due under the contract is paid. Here, the court will assume for the purposes of its analysis below (*i.e.*, whether there was a violation of section 70.006 of the Property Code) that the Defendant had a valid worker's lien for the amount referenced in the Notice of Sale. While the Plaintiff disputed certain charges in the Work Order (and even the authenticity of the Work Order itself), as well as charges for storage costs that were asserted in the Notice of Sale, the court need not ultimately determine these issues for purposes of resolving the Adversary Proceeding. Moreover, as noted later in this Memorandum Opinion, there was insufficient evidence submitted by the Plaintiff to allow the court to make such a conclusion.

[17] There initially appeared to be a dispute regarding whether the 2006 version of Section 70.006 or the 2009 version of 70.006, which became effective September 1, 2009, was applicable to the facts of the Adversary Proceeding. However, based on the post-trial briefing that was submitted [*see* DE ## 17, 18], it appears that both the Plaintiff and Defendant agree (as does the court) that the 2006 version would apply to the facts of the Adversary Proceeding.

10

Transportation Code, or on a motorboat, vessel, or outboard motor for which a certificate of title is required under Subchapter B, Chapter 31, Parks and Wildlife Code, as amended, who retains possession of the motor vehicle, motorboat, vessel, or outboard motor for 30 days after the day that the charges accrue shall give written notice to the owner and each holder of a lien recorded on the certificate of title. If the motor vehicle, motorboat, vessel, or outboard motor is registered outside this state, the holder of a lien under this subchapter who retains possession during that period shall give notice to the last known registered owner and each lienholder of record.

(b) Except as provided by Subsection (c), the notice must be sent by certified mail with return receipt requested and must include the amount of the charges and a request for payment.

(c) The notice may be given by publishing the notice once in a newspaper of general circulation in the county in which the motor vehicle, motorboat, vessel, or outboard motor is stored if:
        (1) the holder of the lien submits a written request by certified mail, return receipt requested, to the governmental entity with which the motor vehicle, motorboat, vessel, or outboard motor is registered requesting information relating to the identity of the last known registered owner and any lienholder of record;
        (2) the holder of the lien:
                (A) is advised in writing by the governmental entity with which the motor vehicle, motorboat, vessel, or outboard motor is registered that the entity is unwilling or unable to provide information on the last known registered owner or any lienholder of record; or
                (B) does not receive a response from the governmental entity with which the motor vehicle, motorboat, vessel, or outboard motor is registered on or before the 21st day after the date the holder of the lien submits a request under Subdivision (1);
        (3) the identity of the last known registered owner cannot be determined;
        (4) the registration does not contain an address for the last known registered owner; and
        (5) the holder of the lien cannot determine the identities and addresses of the lienholders of record.

(d) The holder of the lien is not required to publish

11

notice under Subsection (c) if a correctly addressed notice is sent with sufficient postage under Subsection (b) and is returned as unclaimed or refused or with a notation that the addressee is unknown or has moved without leaving a forwarding address.

(e) After notice is given under this section to the owner of or the holder of a lien on the motor vehicle, motorboat, vessel, or outboard motor, the owner or holder of the lien may obtain possession of the motor vehicle, motorboat, vessel, or outboard motor by paying all charges due to the holder of a lien under this subchapter and Chapter 59 before the 31st day after the date the notice is mailed or published as provided by this section.

(f) If the charges are not paid before the 31st day after the day that the notice is mailed or published, as applicable, the lienholder may sell the motor vehicle, motorboat, vessel, or outboard motor at a public sale and apply the proceeds to the charges. The lienholder shall pay excess proceeds to the person entitled to them.[18]

Parsing through the various provisions of the statute, there were some key actions that the Defendant, as a lien holder, was required to take before he could sell the Vehicle.  First, pursuant to section 70.006(a) of the Texas Property Code, the Defendant was required to retain possession of the Vehicle for 30 days after the charges accrued before sending out the Notice of Sale.  Here, the Defendant testified that the work was completed on the Vehicle (and, thus, the charges accrued) around August 20, 2009.  However, Benites admitted that he sent the Notice of Sale earlier than the statute contemplates (*i.e.*, on September 14, 2009) in order to procure a quicker payment on his mechanic's

---

[18] Tex. Prop. Code Ann. § 70.006 (West 2006).

lien from the Plaintiff. Thus, the court finds that Defendant did not meet the first requirement of section 70.006 of the Texas Property Code because he sent the Notice of Sale approximately 4 days earlier than what is contemplated under the statute.[19]

10. Second, once this initial 30-day period passed, the Defendant was required to give written notice to both the owner and each holder of a lien recorded on the certificate of title (*i.e.*, the Defendant), and such notice was required to be sent by certified mail with return receipt requested and had to include the amount of the charges and a request for payment.[20] Here, the evidence submitted at the Trial shows that the Defendant provided written notice to both Hermes and the Plaintiff by certified mail with return receipt requested.[21] Additionally, the Notice of Sale asserted the amount of charges as well as a request for

---

[19] Arguably, this violation is not relevant since the sale of the Vehicle actually took place in January 2010, thereby curing the prematurity defect of the Notice of Sale. *See Crantex, Inc. v. Precision Crane & Rigging of Houston, Inc.*, 760 S.W.2d 298, 305 (Tex. App.—Texarkana 1998, writ denied) (in applying section 70.005 of the Texas Property Code (which applies to sales of property other than a motor vehicle), the court held that the prematurity of the demand and notice of sale, while a violation of the statute, did not create any harm to the lienholder since the sale of the property took place much later than what was required under the statute, thereby giving the lienholder even more notice than it was entitled to under the statute, effectively curing the violation).

[20] Tex. Prop. Code Ann. § 70.006(a)-(b) (West 2006).

[21] *See* Defendant's Exhibits 1, 2.

13

payment.[22]

11. Third, after the above Notice of Sale was given, the Plaintiff or Hermes were permitted to obtain possession of the Vehicle by paying all the charges asserted by the Defendant in the Notice of Sale before *the 31st day* after the date the notice was mailed by the Defendant.[23]  The 31st day after *September 14, 2009* would have been *October 15, 2009*.  Thus, if the charges were not paid by the Plaintiff or Hermes by *October 15, 2009*, the Defendant would have been permitted under section 70.006(f) of the Texas Property Code to sell the Vehicle at a public sale and apply the proceeds to the charges asserted in the Notice of Sale.[24]

12. The phrases "public sale" and "private sale" are not defined in the Texas Property Code.  However, looking to other statutory authority that uses such terms, such as the Texas Business and Commerce Code, such authority provides that the contents of a notification of disposition are sufficient if the notification states the time and place of a public disposition or

---

[22] *See* Defendant's Exhibit 1 & Plaintiff's Exhibit 6. Plaintiff asserts that the statute requires itemization of the charges, but the Plaintiff has not submitted any relevant authority supporting this specific assertion and, thus, the court finds that the Defendant adequately listed the amount of charges he was asserting and a request for payment.

[23] Tex. Prop. Code. Ann. § 70.006(e) (West 2006).

[24] Tex. Prop. Code. Ann. § 70.006(f) (West 2006).

14

the time after which any other disposition is to be made.[25]
Moreover, section 9.610 defines a "public disposition" as "one at
which the price is determined after the public has had a
meaningful opportunity for competitive bidding" and that a
"meaningful opportunity" implies that "some form of advertisement
or public notice must precede the sale . . . and that the public
must have access to the sale . . . ."[26]  In contrast, a "private
sale" occurs on or after a certain date and the collateral (here,
the Vehicle) is held until the seller receives a satisfactory bid
from a third party.[27]  Moreover, the owner is entitled to
notification of "the time and place of a public disposition" and
notification of "the time after which" a private disposition or
other intended disposition is to be made.[28]  Thus, in summation,
a public sale appears to have one or more of the following
characteristics: (1)the sale must take place at a specific time
and place; (2) there is some sort of advertisement or public
notice preceding the sale; and (3) the public must have access to

---

[25] *See* Tex. Bus. & Com. Code Ann. § 9.613(1)(E) (West 2001).

[26] *See* Tex. Bus. & Com. Code Ann. § 9.610, comment 7 (West 2001).

[27] *See, e.g., Greathouse v. McConnell*, 982 S.W.2d 165, 173 n. 3 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (court described private sale of collateral where notice of the sale was given to the lender, the seller attempted to solicit bids from agents, and collateral was sold to the only bidder).

[28] *See* Tex. Bus. & Com. Code Ann. § 9.610, comment 7 (West 2001).

the sale.[29]

13. Here, the evidence presented at the Trial clearly demonstrates that the Vehicle was not disposed of via a public sale. First, the Notice of Sale sent to the Plaintiff and Hermes referenced a sale on October 14, 2009, at the premises of Alliance Auto Center.[30] Notably, if the Defendant had gone forward with the sale on this date and at this place, the Defendant arguably would have met the requirement that the Vehicle be sold at a "public sale"; however, the "public sale" would still have been earlier than what was mandated by the statute and, thus, the Defendant would have violated section 70.006(f) of the Texas Property Code.[31] However, in reality, the

_____

[29] *See also Williams v. Precision Tire & Alignment, Inc.*, No. 09-02-063CV, 2002 WL 31628017, at * 2-3 (Tex. App.—Beaumont 2002, no pet.) (court held that summary judgment evidence raised fact issues concerning defendant's compliance with section 70.006, where the summary judgment record did not indicate anyone other than the defendant who knew about the sale of the car) (not designated for publication); *Elite Towing, Inc. V. LSI Fin. Group*, 985 S.W.2d 635, 638 (Tex. App.—Austin 1999, no pet.) (court found that "public sale" requirement of section 70.006 was met when notice of sale was sent to owner and lienholder and provided that vehicle would be sold at a public auction on August 1 unless it was redeemed and removed from the premises").

[30] *See* Defendant's Exhibit 1 & Plaintiff's Exhibit 6.

[31] To meet this requirement of section 70.006(f), the sale of the Vehicle could not have been conducted earlier than October 20, 2009 (the date that was 61 days after the charges accrued (*i.e.*, August 20, 2009)). *See Elite Towing, Inc.,* 985 S.W.2d at 640; *Dob's Tire & Auto Ctr. v. Safeway Ins. Agency*, 923 S.W.2d 715, 718-20 (Tex. App.—Houston [1st Dist.] 1999, writ dism'd w.o.j.).

sale noticed for October 14, 2009 never took place at Alliance
Auto Center. Rather, the Defendant waited approximately 3 months
(until January 2010) and ultimately sold the Vehicle via an
advertisement on Craig's List.[32] Moreover, neither the Plaintiff
nor Hermes were given notice of the sale or the advertisement on
Craig's List, and Benites ultimately sold the Vehicle to an
individual who contacted him over the phone. The sale by Benites
had the characteristics of a private sale, not a public sale;
therefore, Benites did not comply with section 70.006(f) of the
Property Code.

**B.** ***Does the Failure to Comply with Section 70.006 of the Texas
Property Code Create a Nondischargeable Claim Under Section
523(a)(2), (a)(4), or (a)(6) of the Bankruptcy Code?***

14. The standard of proof for a plaintiff in an action
under section 523(a)(2), (4), or (6) is preponderance of the
evidence.[33] Exceptions to discharge are construed in favor of
the debtor, with a view to the policy that the Bankruptcy Code is
intended to provide a fresh start to debtors.[34]

1. *Section 523(a)(2)*

15. Section 523(a)(2)(A) excepts from discharge "any debt

---

[32] *See* Defendant's Exhibits 7, 8 & Plaintiff's Exhibit 10.

[33] *Grogan v. Garner*, 498 U.S. 279, 286 (1991); *RecoverEdge,
L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1995).

[34] *McCoun v. Rea (In re Rea)*, 245 B.R. 77, 84 (Bankr. N.D.
Tex. 2000).

... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."[35]  In order for a debtor's representation to be a "false representation or false pretense" under § 523(a)(2)(A), it "must have been: (1) a knowing and fraudulent falsehood; (2) describing past or current facts, (3) relied upon by the other party."[36]  In order to prove nondischargeability under an "actual fraud" theory, the objecting creditor must prove that: "(1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations."[37]  Here, the Plaintiff alleges that two false/fraudulent representations were made by the Defendant which support a ruling that the State Court Judgment is nondischargeable under section 523(a)(2)(A).  First, the

---

[35] 11 U.S.C. § 523(a)(2)(A) (2010).  *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1995).

[36] *Id.* at 1292-93 (citing *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992) & *Bank of La. v. Bercier (In re Bercier)*, 943 F.2d 689, 692 (5th Cir. 1991)).

[37] *Id.* at 1293 (citing *Keeling v. Roeder (In re Roeder)*, 61 B.R. 179, 181 (Bankr. W.D. Ky. 1986)).

Plaintiff asserts that the Defendant fraudulently claimed a lien under section 70.001 of the Texas Property Code where none existed.[38] Specifically, the Plaintiff alleges that the Work Order, which formed the basis of the Notice of Sale, was fraudulently created after the sale of the Vehicle and more than likely, after the State Court Case was filed. Additionally, the Plaintiff alleges that some of the repairs made to the Vehicle were not actual "repairs," but rather enhancements, and that this was yet another fraudulent misrepresentation which helped to form the basis of the Defendant's lien. While the court agrees that the Defendant ultimately did not comply with section 70.006 of the Texas Property Code, there was insufficient credible evidence presented by the Plaintiff to show that the Defendant fraudulently claimed a lien under section 70.001 of the Texas Property Code or that the Work Order was a fabricated document under a preponderance of the evidence standard.[39] Perhaps had there been some testimony from Hermes regarding what the agreed upon repairs were, and what documents he had signed, the court would have been able to make such a finding, but Hermes did not testify at Trial.

16. Second, the Plaintiff also asserts that the State Court

---

[38] This, in itself, is alleged by Plaintiff to amount to a violation of section 70.006 of the Texas Property Code.

[39] *See* also Footnote 16.

Judgment should be nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code because the Notice of Sale provided by the Defendant was false.  Specifically, the Plaintiff asserts that, while the Defendant provided for a sale that would occur at a specific time and place (*i.e.*, October 14, 2009) in his Notice of Sale, the Defendant, in fact, never intended for such sale to go forward.  Here, the court finds that the Plaintiff has not been able to show, by a preponderance of the evidence, that the Defendant never intended for the proposed October 14, 2009 sale to go forward or that putting this date in the Notice of Sale was done so fraudulently.  Rather, the court believes that the sale on October 14, 2009 did not ultimately go forward due to the letter that the Defendant received from the Plaintiff, on October 7, 2009, in which the Plaintiff objected to Defendant's lien and demanded return of the Vehicle.[40]

   *2.   Section 523(a)(4)*

   17.   Section 523(a)(4) provides that the debtor may not discharge a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.[41]  While Texas case law establishes that the sale of a vehicle by the Defendant in violation of section 70.006 of the Texas Property Code

---

   [40] *See* Plaintiff's Exhibit 8.

   [41] 11 U.S.C. § 523(a)(4) (2010).

20

constitutes "conversion,"[42] what is not clear is whether the Defendant's actions also amounted to fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. Here, the court does not believe that the Defendant's action met any of these standards. First, Benites clearly was not acting in a fiduciary capacity.[43] Second, Benites' actions did not

---

[42] *Elite Towing, Inc. v. LSI Fin. Group*, 985 S.W.2d 635, 644-45 (Tex. App.—Austin 1999, no pet); *Collision Ctr. Paint & Body, Inc. v. Campbell*, 773 S.W.2d 354, 357 (Tex. App.—Dallas 1989, no writ); *Kollision King, Inc. v. Calderon*, 968 S.W.2d 20, 23 (Tex. App.—Corpus Christi 1998, no writ).

[43] An automobile repair person would not, under any scenario imaginable, fall within the parameters of a fiduciary. The term "fiduciary," according to Black's Law Dictionary, is derived from Roman law, and means "a person holding the character of a trustee, or a character analogous to that of a trustee, in respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires." BLACK'S LAW DICTIONARY 625 (6th ed. 1990). Moreover, one is acting in a "fiduciary capacity" when "the business which he transacts, or the money or property which he handles, is not his own or for his benefit, but for the benefit of another person, as to whom he stands in a relation implying or necessitating great confidence and trust on the one part and a high degree of good faith on the other part." *Id.* Justice Cardozo is often quoted for having described the "fiduciary" concept as follows:

> Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive is then the standard of behavior.

*Meinhard v. Salmon*, 249 N.Y. 458, 464 (1928). Justice Cardozo again famously wrote about fiduciaries in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934) (writing about the predecessor-statute of Section 523(a)(4) that appeared in the Bankruptcy Act of 1898, § 17, 30 Stat. 544, 550, formerly

constitute larceny.  The term larceny is interpreted under
federal common law, rather than state law definitions of larceny.
Under federal common law, larceny has been defined as the
"felonious taking of another's personal property with intent to
convert it or deprive the owner of same."[44]  Clearly, "larceny"
did not occur in the case at bar, because the property that the
Debtor is alleged to have misappropriated (the Vehicle) came into
the Debtor's hands **lawfully** (to be clear, there was no evidence
that contradicts the notion that Hermes took the Vehicle into the
Defendant's place of business for repairs and other work).  Thus,
the only possible way that section 523(a)(4) could apply is if
the Defendant's actions constituted embezzlement.  In contrast to

---

codified at 11 U.S.C. § 35, repealed 1978).  Notably, the concept
of "fiduciary capacity," under the common law (wherein the
concept has evolved and been refined—much more so than in
statute), is not necessarily "restricted to technical or express
trusts."  *Id.*  However, the Fifth Circuit has opined that the
standard for "fiduciary capacity," as used in Section 523(a)(4)
of the Bankruptcy Code, is stricter or narrower than the concept
has been defined in the general common law.  *Miller v. J.D.
Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998),
*cert. denied,* 526 U.S. 1016 (1999).  As used in Section 523(a)(4)
of the Bankruptcy Code, "fiduciary" is, indeed, "limited to
instances involving express or technical trusts."  *Id.*  In other
words, a mere constructive or implied trust is not enough for
purposes of Section 523(a)(4) of the Bankruptcy Code.  *Angelle v.
Reed (In re Angelle)*, 610 F.2d 1335, 1339 (5th Cir. 1980).

[44] *Clarendon Nat'l Ins. Co. v. Barrett (In re Barrett)*, 156
B.R. 529, 533 n.3 (Bankr. N.D. Tex. 1993), *aff'd*, No. 3:93-CV-
1451, 1999 WL 184117 (citation omitted); *Trimble v. Leeuw (In re
Leeuw*), Bankr. No. 11-32065, 2012 WL 1890361, at * 3 (Bankr. N.D.
Tex. 2012).

larceny, "embezzlement" has been defined as "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has **lawfully** come" (emphasis added).[45]  In other words, there is no **unlawful taking** at the outset, as with larceny.  Nevertheless, in order to prove embezzlement, there must be proof that the creditor entrusted his property to the debtor, that the debtor appropriated the property for use other than that for which it was entrusted, and that there was **intent to defraud** on the part of the debtor.[46]  The court, here, has not been convinced that there was embezzlement.  Here, the Debtor did not appropriate property for a use other than that for which it was entrusted.  The Debtor was entrusted by a party other than the creditor (*i.e.,* Hermes) to perform work on the Vehicle.  There is no evidence that Defendant did not perform the work.  However, when Hermes did not pay, Benites sold the Vehicle without complying with state law.  To be sure, there was a wrongful appropriation.  There was a conversion (as likely believed by the State Court).  But this does not equate to embezzlement.  Conversion is the "wrongful exercise of dominion and control over another's property in denial of or inconsistent

---

[45] *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998), *cert. denied,* 526 U.S. 1016 (1999)*.*

[46] *Id.* at 603.

[with the other's] rights."[47]   Based upon the evidence submitted
at the Trial, the court does not believe that the Defendant
committed embezzlement by violating section 70.006 of the Texas
Property Code.   Certainly, the Defendant did not follow the
correct procedures in enforcing his lien by selling the Vehicle
in a private sale versus a public sale.   But, while violation of
section 70.006 is "wrongful," the court does not believe that
this amounts to embezzlement.   Accordingly, the Plaintiff is not
entitled to a judgment that the State Court Judgment is
nondischargeable under section 523(a)(4) of the Bankruptcy Code.

   *3.   Section 523(a)(6)*

   18.   Section 523(a)(6) provides that the debtor may not
discharge a debt for willful and malicious injury by the debtor
to another entity or to the property of another entity.[48]   The
word "willful" in section 523(a)(6) modifies the word "injury,"
indicating that nondischargeability takes a deliberate or
intentional ***injury***, not merely a deliberate or intentional ***act***
that leads to injury, and if Congress had meant to exempt debts
resulting from unintentionally inflicted injuries, it may have
described instead "willful acts that cause injury."[49]   Following

---

[47] *Bandy v. First State Bank*, 835 S.W.2d 609, 622 (Tex.
1992).

[48] 11 U.S.C. § 523(a)(6) (2010).

[49] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

the Supreme Court's ruling in *Kawaauhau*, the Fifth Circuit
determined that either an objective substantial certainty of
injury or a subjective motive to cause injury meets the Supreme
Court's definition of "willful" in section 523(a)(6).[50] But the
injury to another must not only be "willful" it must be
"malicious." "'[M]alicious' means without just cause or
excuse."[51] "An injury to an entity or property may be a
malicious injury within [the meaning of section 523(a)(6)] if it
was wrongful and without just cause or excuse, even in the
absence [of] personal hatred, spite or ill-will."[52] "[W]here an
act is deliberately and intentionally done with knowing disregard
for the rights of another it falls within the statutory
definition of malice even if there is an absence of malice toward
the particular creditor."[53]

19.  Here, the court finds that the Defendant's violation of
section 70.006, in conducting a private sale versus a public
sale, along with the other facts and circumstances supported by
the evidence, proves, by a preponderance of the evidence, the

---

[50] *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 603 (5th Cir. 1998), *cert. denied*, 526 U.S. 1016 (1999).

[51] *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 486 (5th Cir. 1986).

[52] *Fed. Deposit Ins. Corp. v. LeFeve (In re LeFeve)*, 131 B.R. 588, 602 (Bankr. S.D. Miss. 1991).

[53] *Id.*

commission of a willful and malicious injury by the Defendant.
Here, there was ample testimony by the Defendant that he was
aware of the requirements of the Texas Property Code. In fact,
the Defendant testified that he had followed this same procedure
many times before in foreclosing on his liens in the past and was
familiar with the steps that had to be followed. However, when
the Defendant ultimately chose to sell the Vehicle on Craig's
List in a private sale, without notice to the Plaintiff, or even
the owner, while also not providing them or other parties an
opportunity to competitively bid with the ultimate buyer, the
Defendant not only violated section 70.006 of the Texas Property
Code, but ultimately exhibited the intent necessary for this
court to find that there was a willful and malicious injury under
section 523(a)(6) of the Bankruptcy Code. In fact, the evidence
indicated that both the Plaintiff and Defendant had numerous
conversations after the Notice of Sale was sent, which provided
further proof that the Defendant knew that selling the Vehicle in
the manner in which he did would injure the Plaintiff. It is for
these reasons that the court finds that the Plaintiff has met its
burden as to section 523(a)(6) of the Bankruptcy Code and that
the State Court Judgment is nondischargeable.

## V. ATTORNEY'S FEES

20. The Plaintiff has also made a request for its
reasonable attorney's fees in bringing the Adversary Proceeding.

However, the court finds that the Plaintiff is not entitled to a separate nondischargeable award of attorney's fees associated with this Adversary Proceeding.

21. It has long been the rule in Texas that a plaintiff is not allowed to recover attorney's fees in a lawsuit unless authorized by statute or contract.[54] This is what is known as the American Rule. Here, there was no contract that existed between the Plaintiff and the Defendant which would allow for attorney's fees. Moreover, attorney's fees are not recoverable for prosecuting a fraud claim.[55] In the Adversary Proceeding, the Plaintiff argued that its debt should be excepted from discharge because Benites essentially committed a fraud. The court notes that Section 38.001 of the Texas Prac. & Rems. Code does not permit the Plaintiff to be awarded attorney's fees for a fraud claim. There is also nothing in the Bankruptcy Code that entitles Plaintiff to attorney's fees for successfully prosecuting a section 523 action.

22. In sum, the court has been presented no authority to persuade it that Plaintiff is entitled to a nondischargeable award of attorney's fees associated with the prosecution of this Adversary Proceeding. Accordingly, the Plaintiff's request for

---

[54] *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304, 310-311 (Tex. 2006).

[55] *Id.* at 304.

reasonable attorney's fees incurred in bringing the Adversary Proceeding is denied.

## VI.  CONCLUSION

In conclusion, while the court acknowledges that Benites followed certain of the requirements described in section 70.006 of the Texas Property Code, his decision to sell the Vehicle via an advertisement on Craig's List, in a private sale, without giving adequate notice to the Plaintiff (or even the owner for that matter), was a significant and willful deviation from the statute—of which he was aware—and ultimately entitles the Plaintiff to a nondischargeable claim pursuant to section 523(a)(6) of the Bankruptcy Code in the amount of $23,000 plus pre- and post-judgment interest at a rate of 5%.  Plaintiff shall upload a separate judgment that is consistent with this Memorandum Opinion.

**\* \* \* END OF MEMORANDUM OPINION \* \* \***